UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| KENNETH HOUCK, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | Case No. 3:16-cv-1396-JPG-GCS |
|  | ) |  |
| JOHN DOE 1, | ) |  |
| JOHN DOE 2, | ) |  |
| RONALD LANG, | ) |  |
| R. PATRICK COOK, | ) |  |
| JENNIFER WEBER, | ) |  |
| MARK DELOIA, | ) |  |
| BRIAN MEADE, and | ) |  |
| TAMMY CASTELLANO, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## REPORT & RECOMMENDATION

**SISON, Magistrate Judge:**

As limited by this Court's threshold order (Doc. 14), Plaintiff Kenneth Houck alleges that, based on his status as a homosexual person, Defendants restricted his access to publications and other materials that heterosexual inmates are allowed in violation of his Fifth Amendment rights (Count 1). He also alleges that Defendants prevented him from writing to or soliciting correspondence from pen pals, from possessing certain photographs and from accessing certain written materials in violation of his First Amendment rights (Count 4).

Before the Court is a motion to dismiss for lack of subject matter jurisdiction filed by Defendants (Doc. 38). Magistrate Judge Donald G. Wilkerson previously considered the motion and issued a Report & Recommendation recommending that

the motion be granted. (Doc. 44). District Judge J. Phil Gilbert adopted in part and rejected in part the recommendation and referred the motion back to the magistrate judge for recruitment of counsel for Plaintiff and additional briefing. The matter is now fully briefed and has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72(b) and Local Rule 72.1(a)(2). For the reasons delineated below, it is **RECOMMENDED** that the Court grant Defendants' motion to dismiss.

## I. FINDINGS OF FACT

Houck was convicted of a federal sex offense and incarcerated by the Bureau of Prisons at the United States Penitentiary in Marion, Illinois, beginning on August 15, 2015. He brought this action for alleged violations of his constitutional and statutory rights related to an individual Correctional Management Plan ("CMP") imposed upon him by the Sex-Offender Management Program ("SOMP") at the prison. (Doc. 1). Following threshold review conducted pursuant to 28 U.S.C. § 1915A, Houck was permitted to proceed on two claims brought under the implied cause of action theory recognized in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). (Doc. 14). In Count 1, Houck alleges that Defendants violated his Fifth Amendment equal protection and due process rights by including improper information in his CMP that singled him out for differential treatment based on his status as a homosexual person and by using the CMP to restrict his access to publications and other materials that heterosexual inmates are allowed to possess. *Id.* In Count 4, Houck alleges that Defendants violated his First

Amendment rights to free speech and association by preventing him from writing to or soliciting correspondence with pen pals, possessing certain photographs or accessing certain written material. *Id.*

On August 24, 2017, Defendants filed a motion to dismiss for lack of subject matter jurisdiction (Doc. 38) pursuant to the Supreme Court's ruling in *Ziglar v. Abbasi*, 137 S.Ct. 1843 (2017), in which the Court cautioned against expansion of *Bivens* remedies. Defendants requested that the Court re-examine its screening order. (Doc. 38, p. 2). On March 22, 2018, Magistrate Judge Wilkerson entered a Report and Recommendation that recommended that Defendants' motion to dismiss be granted. On May 9, 2018, Judge Gilbert adopted in part and rejected in part the Report. He directed that counsel be appointed for Houck and that counsel brief the issues raised by the United States. (Doc. 54). Appointed counsel filed a response on Houck's behalf (Doc. 61) and the United States filed a reply brief (Doc. 62). As such, the motion by the United States is ripe for ruling.

## II.  LEGAL STANDARDS

Defendants facially challenge Houck's complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Rule 12(b)(1) operates similarly to Rule 12(b)(6) for purposes of evaluating the sufficiency of a complaint. *See Bultasa Buddhist Temple of Chicago v, Nielsen*, 878 F.3d 570, 573 (7th Cir. 2017). In considering a motion to dismiss, the Court accepts as true all well-pleaded allegations in the complaint and draws all possible inferences in favor of the plaintiff. *See Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir.

2007). A plaintiff need not set out all relevant facts or recite the law in his or her complaint; however, the plaintiff must provide a short and plain statement that shows he or she is entitled to relief. *See* FED. R. CIV. P. 8(a)(2). Thus, a complaint will not be dismissed if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has a facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Additionally, "[a]llegations of a pro se complaint are held to 'less stringent standards than formal pleadings drafted by lawyers . . . Accordingly, *pro se* complaints are liberally construed." *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001)(quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972))(other citations omitted).

### III. CONCLUSIONS OF LAW

The issue before the Court is whether Houck's *Bivens* claims are barred based on the Supreme Court's recent decision in *Ziglar v. Abbasi*, 137 S.Ct. 1843 (2017). Defendants argue that the Court should dismiss Houck's First and Fifth Amendment claims for lack of subject matter jurisdiction.

In *Ziglar*, the Supreme Court reviewed the implied cause of action under *Bivens* and the framework for determining whether a *Bivens* remedy should be extended to a particular claim. *See Ziglar*, 137 S.Ct. at 1859-60. The Court set out a two-part test for determining whether a *Bivens* claims could proceed. *Id*. First, a court

must determine whether the case is "different in a meaningful way from previous *Bivens* cases" so as to present a new context. *Id.* at 1859. If the case does present a new context, then courts should evaluate whether there are "special factors that previous *Bivens* cases did not consider" before allowing a new damages suit to proceed. *Id.* at 1860.

A.  New Context

The Supreme Court in *Ziglar* asserted that a case would present a new *Bivens* context if it was meaningfully different from the cases previously decided by that Court. *See Ziglar*, 137 S.Ct. at 1859. The three types of cases in which a *Bivens* remedy has been recognized include: (1) a Fourth Amendment case against federal officers for unreasonable search and seizure when they arrested a man without a warrant, *Bivens*, 403 U.S. 388 (1971); (2) a Fifth Amendment gender discrimination claim by a woman whose federal employment was terminated by a congressman, *Davis v. Passman*, 442 U.S. 228 (1979); and (3) an Eighth Amendment deliberate indifference claim brought by a federal inmate's estate claiming that his asthma was not treated adequately, *Carlson v. Green*, 446 U.S. 14 (1980). To analyze whether a case would be considered meaningfully different, the Court provided a non-exhaustive list of possible considerations, including the "constitutional right at issue," "the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted," and "the risk of disruptive intrusion by the Judiciary into the functioning of other branches." *Ziglar*, 137 S.Ct. at 1860.

Defendants argue that an equal protection and due process claim by a prisoner alleging that he was singled-out for differential treatment based on his sexual orientation is a new *Bivens* context. (Doc. 38, p. 8). They differentiate Houck's claims from those in *Carlson* because he brings his challenge under the Fifth Amendment instead of the Eighth Amendment. *Id*. Defendants also argue that a claim of violation of free speech and free association rights by a prisoner claiming he was prevented from writing to and soliciting certain correspondence from pen pals, possessing certain photographs or accessing certain legal material is a new *Bivens* context. (Doc. 38, p. 12). They reason that the Supreme Court has never extended *Bivens* to First Amendment claims and additional factors do not warrant making this extension. *Id*.

Houck argues that his claims should be characterized as Eighth Amendment claims rather than the First and Fifth Amendment claims, as laid out in the Court's threshold order. (Doc. 61, p. 1). When interpreted as Eighth Amendment claims, he argues, no new context exists under *Bivens*. *Id*. Despite attempts by counsel to alter the nature of the rights asserted, the claims in this case are strictly First and Fifth Amendment claims. In his initial complaint, Houck brought Eighth Amendment claims, namely in Counts 7, 11, 14 and 15. (Doc. 1, pgs. 28-30). Pursuant to 28 U.S.C. § 1915A, the Court must screen prisoner complaints to filter out non-meritorious claims. Further, the Court is required to construe liberally a pro se complaint. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

In liberally construing Houck's complaint and screening out the non-meritorious claims, the Court concluded that Houck brought a claim under Counts 1 and 4, which implicate only the Fifth and First Amendments. (Doc. 14, pgs. 9-10). Furthermore, although Judge Gilbert reserved ruling on the merits of the Report and Recommendation (Doc. 44), he observed that it did not suffer from any "obvious flaws" and recognized Houck's claims as arising under the Fifth and First Amendments. (Doc. 54).

### 1. First Amendment Claim

Houck's First Amendment claim is meaningfully different from the Supreme Court's previous cases. Houck alleges a violation of his First Amendment rights to free speech and association because he was prevented from writing to or soliciting correspondence with pen pals, possessing certain photographs and accessing certain written material. Compared with the core *Bivens* actions, Houck's First Amendment claim is dissimilar, as it implicates a different constitutional right. Although the Supreme Court has assumed, without deciding, that a First Amendment action exists, it has "never implied a *Bivens* action under any clause of the First Amendment." *Vanderklok v. United States*, 868 F.3d 189, 198 (3rd Cir. 2017). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)(stating that "[f]or while we have allowed a *Bivens* action to redress a violation of . . . the Due Process Clause of the Fifth Amendment . . . we have not found an implied damages remedy under the Free Exercise Clause."); *Bush v. Lucas*, 462 U.S. 367 (1983)(declining to extend *Bivens* to a First Amendment claim). *But see King v. Federal Bureau of Prisons*, 415 F.3d 634

(7th Cir. 2005)(permitting a similar First Amendment claim, refusal of the prison to provide books, without commenting on *Bivens*). Furthermore, since the *Ziglar* decision, courts in this district and elsewhere have consistently declined to create a *Bivens* remedy for alleged First Amendment violations in the prison context. *See, e.g.*, *Borowski v. Baird*, No. 16-cv-848-JPG-SCW, 2018 WL 6583976 (S.D. Ill. Dec. 14, 2018); *White v. Inch*, No. 17-cv-1059-JPG-DGW, 2018 WL 6584899 (S.D. Ill. Dec. 14, 2018); *Vega v. United States*, 881 F.3d 1146 (9th Cir. 2018).

Additionally, the First Amendment claim in this matter is meaningfully different because the restrictions were imposed upon Houck due to the unique circumstances of his conviction and his classification as a sex offender. In the classification of inmates, "Congress has given federal prison officials full discretion to control [the] conditions of confinement." *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976). Additionally, when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. *See Turner v. Safley*, 482 U.S. 78, 89 (1987). The Supreme Court has stated, for example, that sex offender treatment programs do serve a "vital penological purpose[.]" *McKume v. Lile*, 536 U.S. 24, 29, 33 (2002).

Therefore, based on the constitutional right at issue, consistent with the conclusions of other courts considering the same, and based on the unique nature of the challenged conduct in Count 4, Houck's First Amendment claim in this action raises a "new context" for a *Bivens* action.

## 2. Fifth Amendment Claim

Houck's Fifth Amendment claim is meaningfully different from the core *Bivens* actions as well. Here, Houck claims a violation of his Fifth Amendment equal protection and due process rights founded upon discrimination on account of his sexual orientation. Although it is possible to construe his claim as similar in certain ways to the core *Bivens* actions found in *Davis v. Passman*, 442 U.S. 228 (1979) and *Carlson v. Green*, 446 U.S. 14 (1980), further analysis shows that the differences overshadow any similarities.

Houck's case is similar to *Davis* in that he is also alleging that his Fifth Amendment rights have been directly violated by Defendants' discriminatory conduct. The conduct about which he complains included the allegedly unjustifiable alteration of his CMP, verbal harassment and disciplinary action on the basis of his sexuality. In his complaint, Houck alleges that his attempts to engage in communication with male pen-pals (Doc. 1, p. 17) and his possession of non-pornographic pictures of male models (Doc. 1, pgs. 21-24) were violations of his treatment in the Sex Offender Management Program, despite not being directly related to his conviction (Doc. 1, p. 15). This discriminatory conduct, Houck argues, was evidenced further by the Defendants' confiscation of the pictures and their decision to pursue disciplinary action while making homophobic comments to Houck. (Doc. 1, p. 21).

However, Houck's claim is distinct in several crucial ways. While *Davis* considered employment discrimination based on gender, this claim involves

harassment and disparate treatment based on sexual orientation in a prison context. Although both situations involve discrimination in violation of the Fifth Amendment, the parties' relationships, the unrelated contexts in which the situations arose and the specific types of discrimination alleged make Houck's claim dissimilar. Additionally, the Supreme Court's concern about "the extent of judicial guidance as to how an officer should respond to [a] problem . . . to be confronted" is implicated because of the discretionary nature of the classifications of inmates. *See supra, Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976)(stating that "Congress has given federal prison officials full discretion to control [the] conditions of confinement.") As a result, Houck's claim is meaningfully different from the core *Bivens* action at issue in *Davis.*

Houck's case could also be viewed as similar to *Carlson* in that his allegations parallel the law considering verbal harassment under the Eighth Amendment in the *Bivens* context. Houck alleges that a prison official "spread rumors to his staff" that Houck was gay and was "caught having 'naked' guy pictures in his possession," placing him at risk for sexual assault and sexual harassment. (Doc. 1, p. 15). He also alleges that two correctional officers asked Houck, "was the rumors true," and asked if he was "that way" in front of other inmates. *Id.*

To succeed on an Eighth Amendment claim, a plaintiff must show the conditions posed a "substantial risk of serious harm" and that defendants were deliberately indifferent to that risk. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Although many Eighth Amendment cases involve physical injury, the Seventh Circuit has noted that drawing a "categorical distinction between verbal and physical

harassment is arbitrary[.]" *Beal v. Foster*, 803 F.3d 356, 357 (7th Cir. 2015). In *Beal*, the Court indicated that purely verbal harassment constituted cruel and unusual punishment only when the harassment threatens physical assault or causes severe psychological harm. *Id.* at 357-359. Further, the Court took into consideration the fact that the plaintiff conceivably feared that a prison guard's comments labeling him a "homosexual . . . increased the likelihood of sexual assaults on him by other inmates." *Id.* at 358.

Along with the comments allegedly made by prison officials, the Defendants acknowledge that an extensive study by Congress identified sexual orientation as "a factor that is pertinent to whether an inmate is at risk of sexual victimization." (Doc. 38). Therefore, the behaviors and statements of the prison officials, which allegedly revealed sensitive information about Houck's sexuality to other inmates and officials, could be seen as rising to the level of harassment threatening physical assault and/or causing severe psychological harm.

Despite these parallels, a key consideration makes Houck's claim incompatible with the Eighth Amendment claim in *Carlson*. The Supreme Court in *Ziglar* analyzed whether Fifth Amendment claims could be classified as Eighth Amendment claims in determining whether there was a new context. *See Ziglar,* 137 S.Ct. at 1864. The Court stated that "even a modest extension is still an extension" and found that the case presented a "new context for *Bivens* purposes [because] it implicate[d] a different constitutional right." *Id.* Houck's request to bring his Fifth Amendment claim under the Eighth Amendment is strikingly similar to the argument made in *Ziglar*, and the

Supreme Court's analysis and denial of this argument is unambiguous. Thus, Plaintiff's Fifth Amendment claim in this action raises a "new context" for a *Bivens* action.

B.   Special Factors

Because the undersigned concludes that Houck's First and Fifth Amendment claims bring about new contexts for *Bivens* claims, the Court must determine if there are "special factors counseling hesitation before authorizing a new kind of federal litigation." *Ziglar*, 137 S.Ct. at 1858. An inquiry of "special factors" requires a court to determine "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1857-58. The *Ziglar* Court indicated that special factors to consider may include: the impact of a damages remedy on governmental operations, respecting the role of Congress in determining federal-court jurisdiction and whether there is an alternative remedial structure present. *Id.* at 1858. Further, the Court stated that the presence of an alternative remedial structure "alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.* Because both of Houck's claims present new *Bivens* contexts, this Court must inquire into the special factors to determine whether or not to expand a *Bivens* remedy to Houck's claims.

The existence of alternative remedies counsels against expansion of *Bivens* in this case. Alternative remedial structures can take many forms, including administrative, statutory, equitable and state law remedies. *See Vega v. United States*, 881 F.3d 1146, 1154 (9th Cir. 2018). Here, such remedies are available and

include: (1) injunctive relief, 18 U.S.C. § 3626; (2) the Bureau of Prison's administrative remedies program which Plaintiff must follow in accordance with the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a); (3) declaratory judgment, 28 U.S.C. §§ 2201-2202; and (4) a claim under the Prison Rape Elimination Act (PREA) to prevent abuse and harassment, 42 U.S.C. §§ 15601-15609. While none of these alternative remedies allow for money damages and most do not permit Plaintiff to file a lawsuit in order to vindicate his constitutional rights, Plaintiff may also bring a claim for money damages pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671-2680, for any injuries that he sustained as the result of Defendants' alleged actions. Plaintiff is not without some recourse to address his concerns and, therefore, this Court concludes he does have alternative remedies to address his free speech claims.

In addition to the existence of alternative remedies, legislative action suggests Congress chose not to provide a damages remedy for certain violations. Following the Court's decisions creating one of the core *Bivens* actions, Congress enacted the PLRA, making significant changes to how prisoner abuse claims could be brought in federal court. *See Ziglar*, 137 S.Ct. at 1865. Congress decided to make substantial modifications to the process and, yet, chose not to provide a damage remedies, which suggests that Congress "doubt[ed] the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong[.]" Congress's decision demands respect by the courts. *Id.* at 1858. For these reasons, the Court finds that

the special factors in this case dictate not expanding the *Bivens* remedy to these new contexts.

## C. John Doe Defendants

There are two John Doe defendants in this case who have not been identified or served and, therefore, they have not joined in the Defendants' motion to dismiss. However, the same reasons that the claim should be dismissed as to the named Defendants also apply to the John Doe defendants, making finding and identifying these defendants futile. Therefore, it is appropriate to dismiss the Houck's claims against the John Doe Defendants for the above-described reasons.

## IV. CONCLUSION

For the above-stated reasons, it is **RECOMMENDED** that the Court **GRANT** Defendants' motion to dismiss. It is further **RECOMMENDED** that the Court **DISMISS** Houck's claims against the John Doe defendants, as his claims against the unnamed defendants similarly fail. The undersigned **RECOMMENDS** that the Court **DISMISS with prejudice** this action for lack of subject matter jurisdiction.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Recommendation. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Seventh Circuit Court of Appeals. *See, e.g.*, *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004). Accordingly, objections to this Report and Recommendation must be filed on or before Friday, October 4, 2019.

**IT IS SO ORDERED.**

Dated: September 17, 2019.

_____
GILBERT C. SISON
United States Magistrate Judge